WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter J Piper,<br><br>          Plaintiff,<br><br>v.<br><br>Gooding & Company Incorporated, et al.,<br><br>          Defendants. | No. CV-18-00244-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendant Gooding & Company's ("Gooding") amended motion to dismiss for failure to state a claim (Doc. 70), and Plaintiff Peter Piper's motion for preliminary injunction (Doc. 74). The motions are fully briefed. On July 17, 2018, the Court held an evidentiary hearing on the preliminary injunction motion. For the reasons discussed below, Gooding's motion to dismiss is granted in part and denied in part, and Piper's preliminary injunction motion is granted.

## **MOTION TO DISMISS**

**I. Background**

This case involves a dispute over the ownership of a rare 1954 Ferrari ("the Ferrari"). Piper's father, James, purchased the Ferrari in 1962, had it restored in 1982, and won Most Elegant Sports car at the Pebble Beach Concours d'Elégance in August 1989. (Doc. 69 ¶¶ 13-15.) Following the Concours d'Elégance, a potential buyer offered James $1.7 million for the Ferrari. (¶ 16.) He declined to sell it.

Also in 1989, James moved to Mexico and became romantically involved with Maria Socorro De Rodriguez La Pine ("Socorro"). (¶ 17.) On September 19, 1989, James died, purportedly from heart complications. (¶¶ 18, 79-80.) Because James' body was immediately cremated, further investigation into his cause of death was impossible. At the time of James' death he still owned the Ferrari. (¶ 75.)

Soon after James' death, Socorro advised Piper that she was taking steps to protect James' assets for distribution to the family. (¶ 20.) Socorro represented to Piper that James had hired an attorney to transfer title of his Ferraris, including the 1954 Ferrari, into a holding entity for the benefit of Piper and his siblings. (¶ 87.) Piper met with James' attorney and orally authorized the transfer of the Ferraris to the holding entity.[1] (¶¶ 88-89.) Piper, however, never received documentation confirming the transfer. (¶¶ 89-90.)

Unbeknownst to Piper, Socorro was suspected of murdering several prior love interests and dispossessing the decedents of their assets. (¶¶ 19-20.) Despite being unaware of this fact, Piper began to suspect that Socorro was involved in his father's death and confronted her. (¶ 90.) After being confronted by Piper, Socorro vanished. Piper was left with no information concerning the whereabouts of the Ferrari, as James and Socorro, the two people possessing that information, suddenly were gone. (¶ 91.)

In fact, the Ferrari was being stored in an empty shop next to Francorchamps of America, Inc. ("FAI"), the same company that restored the Ferrari in 1982. (¶¶ 102-04.) The Ferrari remained in FAI's empty shop until 1991, at which time Socorro sold the vehicle to Robert Butler. (¶¶ 106-07.) Butler purchased the Ferrari for $300,000.00, less than twenty percent of the market value just two years prior. (¶ 107.) Rod Drew, the owner of FAI, was unaware of the allegations against Socorro until after she sold the Ferrari. (¶ 109.) In 1995, Butler listed the Ferrari for sale, mislabeling it a 1955. (¶ 117.) Butler then sold the Ferrari for $150,000.00 to Todd Morici. (¶ 118.) Morici, in turn, sold the Ferrari to Defendant Falcon Woods LLC ("Falcon Woods"). (¶ 119.)

---

[1] Although not in the complaint, evidence was presented at the July 17, 2018 hearing that the name of this entity was V-Twelve, Ltd. ("V-Twelve").

Piper intermittently searched for the Ferrari, including discussing with the FBI the possibility that his father was murdered and the vehicle stolen. (¶ 22.) It was not until December 2017 that Piper discovered information advertising the vehicle for sale at auction. (*Id.*) Gooding, on behalf of Falcon Woods, planned to auction the Ferrari in Scottsdale, Arizona on January 20, 2018, for an estimated price between $1.6 million and $2 million. (¶¶ 140, 155.) Gooding's provenance for the Ferrari contained multiple errors, including that James sold the vehicle in 1991, two years after his death, and that he initially acquired it in 1982. (¶¶ 141, 143.)

On January 18, 2018, Piper visited Gooding's auction, viewed the Ferrari, and confirmed that it was his father's. (¶¶ 159-60.) That same day, Piper presented Gooding's in-house counsel with notice of his claim to the Ferrari. (¶ 161.) On January 19, 2018, Gooding placed a notice on the vehicle, informing potential purchasers that it was processing a new title. (¶¶ 126, 162.) On January 20, 2018, the Ferrari was withdrawn from auction. (¶ 169.) On January 23, 2018, Piper filed his verified complaint and application for temporary restraining order application. (¶ 171.) Piper's complaint alleges seven claims, including: (1) conversion; (2) trespass to chattels; (3) unjust enrichment; (4) civil conspiracy; (5) violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; (6) violations of Arizona's RICO statute, A.R.S. § 13-2314; and (7) replevin of the Ferrari. Gooding moves to dismiss all of Piper's claims.[2]

**II. Legal Standard**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec.*

---

[2] Falcon Woods did not join Gooding's motion to dismiss.

*Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid dismissal, the complaint must plead sufficient facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

**III. Discussion**

Gooding argues that each of Piper's tort claims (conversion, trespass to chattels, unjust enrichment, and civil conspiracy) fail because Falcon Woods has superior title as a result of Socorro conveying good title to the Ferrari. Gooding also argues that Piper's federal and state RICO claims should be dismissed for failure to properly allege a pattern of racketeering activity or the requisite level of continuity.

**A. Tort Claims**

Assuming, as Piper alleges, that Socorro wrongfully acquired the Ferrari, Gooding argues that Falcon Woods nonetheless has superior title for three independent reasons. (Doc. 70 at 11.)

First, Gooding asserts that Socorro conveyed good title under California's innocent purchaser defense.[3] As a general rule, "[t]he possessor of stolen goods has void rather than voidable title, and therefore cannot convey good title . . . regardless of how innocently the goods were acquired by him." *Suburban Motors, Inc. v. State Farm Mut. Auto. Ins. Co.*, 268 Cal. Rptr. 16, 19 (Cal. Ct. App. 1990). But under California's innocent purchaser defense, Cal. Com. Code § 2403(1), an innocent purchaser for value, without actual or constructive notice that his vendor has secured the vehicle by a fraudulent purchase, may take good title. *Id.* The law distinguishes between a purchaser whose vendor obtained title by fraud and a purchaser whose vendor obtained title by theft. *See* Cal. Com. Code § 2403(1); *State Farm Mut. Auto. Ins. Co. v. Dep't of Motor Vehicles,* 62 Cal. Rptr. 2d 178, 181 (Cal. Ct. App. 1997). Gooding argues that, at most, the allegations in the complaint support that Socorro procured the Ferrari by fraud rather

---

[3] Because the parties apply California law to the conversion claim, the Court will do the same.

- 4 -

than theft, that Butler was a good faith purchaser without notice, and that the innocent purchaser defense applies. The Court disagrees.

Piper has alleged sufficient facts that, if true, plausibly prevent application of the innocent purchaser defense. According to the complaint, Piper and his siblings, as the only heirs to James' estate, inherited the Ferrari through intestate succession. Absent from the complaint is any allegation that Piper was defrauded into selling Socorro the Ferrari or authorizing her to transfer ownership of it. Nevertheless, Socorro sold the Ferrari. Accordingly, the Court finds that Piper has sufficiently alleged that Socorro obtained the Ferrari by theft.

Second, Gooding argues that because Piper is not entitled "to the benefit of the common law rule that a thief cannot pass title to stolen property" because he failed to "utilize provisions of law that would protect his interest" in the Ferrari. (Doc. 70 at 11.) Gooding contends that Piper fails to allege that he filed a police report "put[ting] the public on constructive notice of [his] purported rights[.]" (*Id.* at 12-13.) For support, Gooding cites California Civil Code § 3543, which provides that "[w]here one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." California, however, has refused to apply § 3543 to cases where criminal conduct, such as theft, is the proximate cause of the injury:

> a party is not bound in transactions of this character either to anticipate or take precaution against the commission of a crime by which another may be deceived; that is where it is through the instrumentality of a criminal act that the wrong is accomplished, it is the crime, and not the negligent act, which is the proximate cause of injury; and in such a case the maxim that where one of two innocent persons must suffer from the wrongful act of another, the loss must fall upon the one making the act possible, has no application.

*Nathe v. Gray*, 75 Cal. App. 2d 682, 686 (Cal. Ct. App. 1946). Here, because Piper has sufficiently alleged that Socorro stole the Ferrari—whether by theft or fraud—§ 3543 does not require dismissal.

Lastly, Gooding contends that "because [Piper] does not assert the existence of a proceeding under California Probate Code § 255 (the Slayer Statute) as of 1991 (when

Butler acquired the Ferrari), Socorro's being the alleged murderer of James[] would have no effect on her ability to transfer title as an heir of Piper." (Doc. 70 at 13.) This argument fails because, according to the complaint, Socorro was not James' surviving spouse for purposes of probate because the two never legally married.[4]

In addition to these arguments, which are common to all of Piper's tort claims, Gooding raises additional defenses to each tort claim under the assumption that Socorro failed to transfer good title and that Piper is the rightful owner of the Ferrari. The Court discusses each in turn.

### i. Conversion

Relying on *Simonian v. Patterson*, 32 Cal. Rptr. 2d 722 (Cal. Ct. App. 1994), Gooding asserts that Piper's conversion claim fails because, as a bailee of the Ferrari, Gooding cannot be subject to a conversion action. The Court disagrees. The *Simonian* court held that a defendant incurs no liability by acting as a "mere conduit" in transferring items if he derives no personal gain from the transfer and delivers the items pursuant to the bailment before "notice of the rights of the real owner." *Id.* at 727. As alleged, Gooding stands to financially gain from its bailment agreement and was on notice of Piper's ownership interest while still in possession of the vehicle. Gooding's motion to dismiss the conversion claim therefore is denied. *See* 5 Witkin Summary of Cal. Law Torts, § 712(2) (10th ed. 2005) ("where a person entitled to possession demands it, the wrongful, unjustified withholding is actionable as conversion").

### ii. Trespass to Chattels

Trespass to chattel "lies where an intentional interference with the possession of personal property has proximately caused injury." *Thrifty–Tel, Inc. v. Bezenek*, 54 Cal. Rptr. 2d 468, 473 (Cal. Ct. App. 1996). A trespass to a chattel may be committed by

---

[4] Gooding also takes the position that "unless [Piper] can plausibly allege that every purchaser of the Ferrari up through Falcon Woods . . . was not a bona fide purchaser for value" his clams must fail. (Doc. 70 at 13.) The Court disagrees. Under California law, "a sale by the thief *or any other person claiming under the thief* does not vest any title in the purchaser as against the owner, though the sale was made in the ordinary course of trade and the purchaser acted in good faith." *Suburban Motors*, 268 Cal. Rptr. at 19 (emphasis added).

intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another. *Jamgotchian v. Slender*, 89 Cal. Rptr. 3d 122, 134 (Cal. Ct. App. 2009). Even without further damages, dispossession alone is actionable. *Id*; Restatement (Second) Torts § 218. A dispossession may take place by intentionally preventing the possessor from having access to a chattel. Restatement (Second) Torts § 221(c) cmt. e. Piper has plausibly alleged that he is the rightful owner of the Ferrari, and that Gooding is wrongfully in possession of and intentionally preventing Piper's access to it. As such, the Court denies Gooding's motion to dismiss the trespass to chattels claim.

### iii. Unjust Enrichment

Unjust enrichment is the "receipt of a benefit and the unjust retention of the benefit at the expense of another." *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008). Gooding argues that the claim should be dismissed because it has not received any benefit from the Ferrari, which has yet to be sold. For purposes of an unjust enrichment claim, however, benefit is defined broadly and denotes any form of advantage, including an interest in money, land, or chattels. *First Nationwide Sav. v. Perry*, 15 Cal. Rptr. 2d 173, 176 (Cal. Ct. App. 1992) (citing Restatement Restitution § 1 cmt. b). Because Gooding has a future financial interest from the sale of the Ferrari, Gooding's motion to dismiss the unjust enrichment claim is denied.

### iv. Civil Conspiracy

Civil conspiracy requires: (1) formation and operation of the conspiracy and (2) damage resulting to the plaintiff (3) from an act done in furtherance of the common design. *Thompson v. Cal. Fair Plan Ass'n*, 270 Cal. Rptr. 590, 593 (Cal. Ct. App. 1990). To maintain such an action, "there must be alleged an act in furtherance of the conspiracy which is itself a tort." *Id.* (citing *Selby Realty Co. v. City of San Buenaventura*, 514 P.2d 111, 127 (Cal. 1973)). Piper sufficiently alleges each element of the claim to survive Gooding's motion to dismiss. Piper alleges that Gooding's and Falcon Woods' legal representative conspired to commit tortious acts, including conversion by transporting and selling Piper's stolen Ferrari. (Doc. 69 ¶¶ 235-239.) Accordingly, Gooding's motion

to dismiss the civil conspiracy claim is denied.

## B. RICO Claims

Piper alleges claims under the federal RICO statute and its state law counterpart. To state a civil RICO claim under federal law a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation and citation omitted); *see* 18 U.S.C. § 1962(a). Arizona's counterpart similarly requires that a plaintiff allege a "pattern of racketeering activity." A.R.S. § 13–2314.04(A).[5] At issue is whether Plaintiff properly alleged a pattern of racketeering activity.

A pattern of racketeering activity consists of at least two predicate acts committed within a 10-year period. 18 U.S.C. §§ 1961(1), (5); *Hannosh v. Segal*, 328 P.3d 1049, 1053 (Ariz. Ct. App. 2014) ("A 'pattern of racketeering activity' means that there must be at least two related and continuous acts of racketeering.") (citations omitted). The term "racketeering activity," also referred to as "predicate acts," includes "any act indictable under several provisions of Title 18 of the United States Code . . . ." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Two acts are necessary, but not sufficient, for finding a violation. *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989). Rather, a pattern of racketeering activity also requires proof that the racketeering predicates are related and "that they amount to or pose a threat of continued criminal activity." *Id.* at 239. Gooding asserts that Piper has not adequately alleged a pattern because (1) the claim is based on a single predicate act, and (2) lacks the requisite degree of continuity. (Doc. 70 at 17-18.)

The complaint alleges that Gooding shipped the Ferrari from Wisconsin to Arizona and then from Arizona to California. (Doc. 69 ¶ 127.) The issue of whether each shipment constitutes a separate predicate act presents a close call. *Compare U.S. v.*

---

[5] Because the Arizona and federal statutes are analogous, Arizona courts look to federal interpretations of the RICO statute for guidance. *Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 7 P.3d 158, 161 (Ariz. Ct. App. 2000). This Court will do the same.

*Vaughn*, 797 F.2d 1485, 1493 (9th Cir. 1986), *and Harper v. New Japan Secs. Int'l., Inc.*, 545 F. Supp. 1002, 1004 (C.D. Cal. 1982), *with Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986). The Court need not decide this issue, however, because Piper's RICO claim fails to allege the requisite continuity.

"The continuity requirement . . . is aimed only at eliminating RICO actions against perpetrators of isolated or sporadic acts and is not an attempt to limit RICO to complicated systems or multiple schemes of criminal activity." *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 193-94 (9th Cir. 1987). "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *H.J. Inc.*, 492 U.S. at 241. Although the Ninth Circuit has established a "flexible concept" of what constitutes closed-ended continuity, and has rejected a bright-line one-year rule, the pattern must nonetheless last for more than a few months. *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995). Here, because Piper's allegations concern merely a period of weeks, he cannot demonstrate closed-ended continuity.

Open-ended continuity, on the other hand, requires either (1) a threat of future criminal conduct; or (2) conduct that constitutes the enterprise's regular way of doing business. *H.J., Inc.*, 492 U.S. at 241-42. In either case, the touchstone of a pattern is past conduct that by its nature projects into the future with a threat of repetition. *See Allwaste, Inc.*, 65 F.3d at 1528. Piper alleges that the "Ferrari was transported several times in the regular course of Gooding's business and the threat of future transport and sale remains not only a possibility, but a near certainty give [sic] the intent to sell the vehicle." (Doc. 76 at 14.) A plaintiff, however, "cannot establish open-ended continuity if the defendant's collective conduct is in a sense a single episode with a single purpose, rather than a series of separate, related acts." *Straightshot Comms. Inc. v. Telekenex, Inc.*, No. C10-268Z, 2010 WL 11488936, at *4 (W.D. Wash. Nov. 15, 2010) (citing *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992)). Stated differently, where the defendant's predicate acts are all directed to one goal, which has a definitive ending date,

there is no threat of future criminal activity once that goal is accomplished. *Id.* at *4 (citing *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992)); *see also Medallion Television Enters., Inc. v. SelectTV of Cal., Inc.*, 833 F.2d 1360, 1364 (9th Cir. 1987) (finding that predicate acts designed to bring about a single event (the signing of a television contract) did not pose a threat of continuity). Because Gooding's predicate acts—shipping and receipt of stolen vehicles—are all directed to one goal—the sale of the Ferrari—they present no threat of future criminal activity or open-ended continuity. As such, Piper's federal and state RICO claims are dismissed.[6]

## PRELIMINARY INJUNCTION MOTION

### I. Legal Standard

A plaintiff seeking a preliminary injunction must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). The sliding-scale approach, however, does not relieve the movant of the burden to satisfy all four prongs for the issuance of a preliminary injunction. *Id.* at 1135. Instead, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* A "serious question" is one on which the movant has a fair chance of success on the merits. *Sierra On–Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984). The movant bears the burden of proof on each

---
[6] Although Falcon Woods did not join this motion, Piper's counsel conceded at oral argument that if the RICO claims were dismissed as to Gooding, the claims should be dismissed with respect to Falcon Woods as well. The Court therefore dismisses these counts in the entirety.

- 10 -

element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

**II. Discussion**

Piper alleges that Defendants are liable for conversion.[7] "Conversion is the wrongful exercise of dominion over the property of another." *Lee v. Hanley*, 354 P.3d 334, 344 (Cal. 2015). Further, where a person entitled to possession demands it, the wrongful, unjustified withholding is actionable as conversion. *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1145 (9th Cir. 2010) (citing 5 Witkin Summary of Cal. Law Torts, § 712(2)). "Under California law, each time stolen property is transferred to a new possessor, a new tort or act of conversion has occurred." *von Saher v. Norton Simon Museum of Art at Pasadena*, No. 07-CV-2866-JFW (JTLx), 2015 WL 12910626, at *7 (C.D. Cal. Apr. 2, 2015). The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages . . . ." *Lee*, 354 P.3d at 344.

The parties largely agree that the linchpin of Piper's conversion claim is whether he likely is the rightful owner of the Ferrari. (Doc. 80 at 3; Doc. 81 at 1-2.) Generally, under California law, "[v]ehicle ownership is a fact question [] to [be] determine[d] in light of all the circumstances." *In re Stinson,* 443 B.R. 438, 443 (B.A.P. 9th Cir. 2010). Title documents are prima facie evidence of ownership, but are not unimpeachable or conclusive evidence of ownership. *Id.* Also applicable to the Court's determination is California's recognition of the innocent purchaser defense, which, as explained above, holds that a bona fide purchaser for value has superior title if the purchaser's vendor obtained title by voluntary transfer. *Suburban Motors*, 268 Cal. Rptr. at 18. This defense

---

[7] Although Piper argues that he is likely to succeed on the merits of his claim for conversion, trespass to chattel, unjust enrichment, and conspiracy, a party seeking a preliminary injunction need only demonstrate a likelihood of success on one claim for which injunctive relief would otherwise be appropriate. *See Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006). The Court will limit its analysis to Piper's conversion claim, both because the parties' briefs focus predominately on that claim and because the Court finds sufficiently serious questions go to the merits of it.

is inapplicable, however, if the purchaser's vendor obtained title by theft. *Id.*

The Court finds that the evidence presented raises serious questions as to who is the rightful owner of the Ferrari. The Court heard testimony that James purchased the Ferrari in 1962, owned it as of his death on September 19, 1989, and died without a will. Defendants' argument that plaintiff was not the owner turned on a Louisiana Certificate of Title ("Louisiana Title"), reflecting that V-Twelve, not James, owned the Ferrari as of September 12, 1989—a week prior to James' death (Doc. 74-1 at 8-9)—Piper cast significant doubt on the veracity of the Louisiana Title. A "duplicate" copy of the title, not the original, was offered in evidence at the preliminary injunction hearing. Because of the inaccuracies contained on the face of this title, a question exists as to the original's authenticity. For instance, the Louisiana Title wrongly states the year, color, and mileage of the Ferrari. Even if the title is admitted in to evidence at trial, it might be of little or no evidentiary value, because the inaccuracies and inconsistencies on its face suggest it is a forgery.

The Court also finds that Piper's presentation of evidence raises serious questions as to the applicability of the innocent purchaser defense. For instance, there is evidence that the original buyer, Butler, knew or should have known that the vehicle was stolen given that it was sold for a fraction of the market price for a Ferrari recently crowned most elegant sports car at the Concours de Elégance. Moreover, there is evidence that the vehicle's vendor, Socorro, obtained the Ferrari by theft and not fraudulent purchase. For instance, the Ferrari's Louisiana Title had multiple errors indicative of a fabricated title. *See Suburban Motors*, 268 Cal. Rptr. at 18 ("[T]here is no authority for [the] contention that section 2403 validates a second chain of title to an automobile spuriously created after it has been stolen."). The evidence also suggests that Socorro lacked authority to sell the Ferrari on behalf of the heirs or V-Twelve.

With respect to irreparable harm and balancing of the hardships, the Court finds that Piper has met his burden. Although some equivocal evidence and representations by Piper's counsel suggests that Piper might eventually sell the Ferrari, this point is not

definitively established. To the extent that Piper intends to keep the vehicle because of its sentimental value, monetary damages are an inadequate remedy. In comparison, Falcon Woods represented at the hearing and in its papers that it plans to retain possession of the vehicle until, at the earliest, completion of this suit. (Doc. 72 at 35 ¶ 11.) As such, issuance of a preliminary injunction merely requires Falcon Woods to do what it has stated it already intends. Finally, Piper has demonstrated that a genuine public interest supports the issuance of a preliminary injunction. Specifically, there is a "public interest in preventing the transport and sale of stolen vehicles." (Doc. 74 at 21.)

Having considered each of the factors required for a preliminary injunction, the Court concludes that Piper has made an adequate showing as to all four prongs. Accordingly, his request for a preliminary injunction is granted.

**IT IS ORDERED** that Gooding's Motion to Dismiss (Doc. 70) is **GRANTED in part and DENIED in part**. Piper's RICO claims, Count V and VI, are dismissed for failure to state a claim for which relief can be granted.

**IT IS FURTHER ORDERED** that Piper's Motion for Preliminary Injunction (Doc. 74) is **GRANTED** as follows:

1. Defendants must not move or transfer the Ferrari out of Santa Monica, California.

2. Defendants must secure the Ferrari at Gooding's facility in Santa Monica (where Piper may inspect it) subject to the jurisdiction of this Court.

3. Defendants must not sell, promise, pledge, or otherwise lien or encumber the Ferrari.

Dated this 10th day of August, 2018.

Douglas L. Rayes
United States District Judge